STATE OF VERMONT

**SUPERIOR COURT**
**Rutland Unit**

**CIVIL DIVISION**
**Docket #383-10-15 Rdsc**

PARKER'S CLASSIC AUTO WORKS, INC.

v.

COMMERCE INSURANCE COMPANY

FILED

APR 21 2016

VERMONT SUPERIOR COURT
RUTLAND

## FINDINGS OF FACT and CONCLUSIONS OF LAW

In this small claims case, Plaintiff Parker's Classic Auto Works, Inc. (Parker's), a collision repair business, seeks to recover claimed shortfalls in the amounts paid by the Defendant Commerce Insurance Company (Commerce) for repairs to customers' vehicles. A hearing on the merits took place on March 28, 2016. Plaintiff was represented by Attorney Robert McClallen. Defendant was represented by Attorney John Boylan. Although this is a small claims case, the attorneys stipulated to the use of the Vermont Rules of Evidence.

### Findings of Fact

Parker's has been in business operating a collision repair shop since 1990. Mike Parker is the President and Vice President. There are 16 employees and the business repairs 900-1100 vehicles per year. It is a "pro-consumer" shop in which Parker's contracts directly with the vehicle owner to make repairs, and the owner agrees to pay for the cost of repair. The vehicle owner is responsible to Parker's for the entire cost of repair. The insurance reimbursement to the owner is based on the contract between the owner and his or her insurance company. This is in contrast with repair shops that operate under a Direct Repair Program, in which the repair contract is between the insurance company and the shop and the shop accepts the amount paid by the insurance company as full payment for the cost of repair. Commerce provided insurance for the three vehicles involved in this case.

Parker's repaired the three vehicles and Commerce paid less than the full amount Parker's billed the vehicle owners for the cost of repair. Each owner assigned to Parker's his or her claim to collect any shortfall, and Parker's is seeking compensation based on those assignments. Commerce disputes the validity of the assignments and challenged through cross examination whether the amounts Parker's billed represented the reasonable cost of repair.

When customers bring their damaged vehicles to Parker's, sometimes they bring with them an estimate of the cost of repair from their insurer. In other cases, the

1

insurance company sends an appraiser to estimate the cost of repair. In both situations, the insurer's appraiser estimates the cost of repair based on (a) a visual overview of the damage, usually without inspecting internal damage in places not visible from the exterior, and (b) the use of an estimating manual, of which there are three major ones and a few minor ones. The standard used is the cost of repairing new, undamaged cars with new, undamaged parts, which may or may not apply to the reality of the vehicle needing repair. Estimates can vary depending on which manual is used, and whether or not the representative follows the instructions in the procedure pages at the back of the manual.

Parker's reviews the appraiser's initial estimate, and sometimes does its own estimate. It communicates with the appraiser about items it estimates differently than the appraiser, both initially and later on after it has disassembled the vehicle and obtained more information.

When the customer brings the vehicle in, Parker's makes an agreement with the owner that the owner will pay the full cost of repair. Parker's has the owner sign an authorization to proceed with the work on that basis, along with an authorization for the owner's insurance company to pay any insurance proceeds directly to Parker's. The owner is also asked to sign a document assigning to Parker's its right to sue the insurer for the insurer's obligation to the owner to pay the cost of repair.

Commerce generally sends Parker's a check for the estimated cost of repairs. As noted above, as Parker's works on the vehicle, if it discovers that actual circumstances vary from those used in the appraiser's estimate, Parker's notifies Commerce of such differences. If Commerce agrees with the changes and the changes increase the estimate, Commerce sends Parker's the additional funds related to the amended estimate.

Once repairs are done, Parker's has a lien against the vehicle until repair charges are paid, and is entitled to retain the vehicle until the lien is satisfied. In exchange for taking assignment of the owner's claim against his or her own insurance company, Parker's agrees to release the vehicle to the owner when the repairs are complete, without waiting for full payment, and assumes the responsibility to sort out any disagreements about the reasonable cost of repair with the insurance company.

The owners of all three vehicles involved in this case assigned their rights for reimbursement from Commerce to Parker's, and took delivery of the vehicles once the repairs were complete.

Parker's does not create its bill based on any estimate done by Commerce or its own estimate. Rather, it keeps track of the actual costs of repair and creates an invoice with specific charges for each item of labor, parts, and materials. When the work is complete, it creates a final invoice based on the actual cost of repair. Understandably, this final invoice can vary from an estimate based on standardized manuals.

In these three cases, Parker's final bills were higher than the adjusted estimates. Commerce had paid Parker's on behalf of the vehicle owners only the amounts of the

adjusted estimates. Based on the assignments, Parker's sought the shortfalls from Commerce, which declined to pay them.

The specific facts related to the three vehicle repairs are as follows:

McNary

On August 31, 2009, Seth McNary's Honda Civic was towed to Parker's, and Mr. McNary signed two documents: (1) one authorizing Parker's to repair his vehicle, including repairs discovered during the repair process to be necessary, and authorizing Commerce to pay all insurance proceeds directly to Parker's, and (2) an "Assignment of Proceeds" that stated: "In exchange for excusing me from making immediate payment for repairs to my motor vehicle and/or releasing a possessory lien that Parker's Classic Autoworks has or may have the right to assert, I hereby assign any proceeds that have accrued or may accrue under my insurance contract relating to claim #NWPM31 for repair costs to my motor vehicle to Parker's Classic Autoworks."

The work to be done included replacing parts. Commerce's estimate was $3,898.00, of which Mr. McNary paid the deductible of $500.00 and Commerce paid $3,398.00 to Parker's. During the repair process, Parker's discovered additional work was needed and communicated that to the insurance company appraiser, who agreed with a portion of the increased amount, but not all. Parker's final bill for the work was $5,723.44, of which Mr. McNary paid $500.00 and Commerce paid $4,921.05, leaving a balance of $302.39 as of November 12, 2009, which Commerce declined to pay.

The court finds, based on the evidence admitted, that $5,723.44 was the actual reasonable and necessary cost of repair. Parker's seeks recovery of $302.39 plus interest from Commerce.

Kehn

On December 7, 2011, Elijah Kehn arranged for Parker's to repair his 2008 Mazda, and Mr. Kehn signed two documents: (1) one authorizing Parker's to repair his vehicle, including repairs discovered during the repair process to be necessary, and authorizing Commerce to pay all insurance proceeds directly to Parker's, and (2) an "Assignment of My Claims for Money Due" that stated: "I hired Parker's Classic Auto Works, Ltd. to repair the said motor vehicle [identified in previous paragraph]. In exchange for Parker's Classic Auto Works, Ltd. allowing me to take my motor vehicle from its collision repair facility before fully paying for its repair, and/or giving up its right to keep my motor vehicle until its repair bill has been paid in full, I hereby give and assign to Parker's Classic Auto Works, Ltd. my rights to collect money due or owed me under a policy of insurance relating to: Claim Number: VWKA15 for repairs to my motor vehicle performed by Parker's Classic Auto Works, Ltd., by any lawful means including suing the insurance company or the person(s) who caused the damage to my motor vehicle."

There was front-end damage to the vehicle. Commerce's estimate was $1,453.91, which it paid promptly. During the course of repair, Parker's discovered that the bill

3

would be higher and sent the information to Commerce's representative. Parker's final bill was $704.46 higher than the original estimate, of which Commerce paid $34.78, leaving a balance of $669.68 as of February 8, 2012, which Commerce declined to pay.

The court finds, based on the evidence admitted, that Parker's total bill of $2,158.37 was the actual reasonable and necessary cost of repair. Parker's seeks recovery of $669.68 plus interest from Commerce.

Lepore

On April 9, 2012, Gina Lepore arranged for Parker's to repair her 2008 Honda CRV, and she signed two documents: (1) one authorizing Parker's to repair her vehicle, including repairs not discovered at the initial inspection and related to the loss, and authorizing Commerce to pay all insurance proceeds directly to Parker's, and (2) an "Assignment of My Claims for Money Due" that is identical to the one signed by Mr. Kehn and quoted above.

The vehicle had been involved in a rollover. Commerce's initial estimate was $5,793.92, of which Ms. Lepore paid the deductible of $500.00 and Commerce paid $5,293.92 to Parker's. During the repair process, Parker's discovered additional work was needed and communicated to the insurance company appraiser that additional work was needed. Commerce made two additional payments, of $339.00 and 781.33. Parker's final bill for the work was $7,954.82, of which Ms. Lepore paid $500.00 and Commerce paid $6,414.25, leaving a balance of $1,040.57 as of June 25, 2012, which Commerce declined to pay.

The court finds, based on the evidence admitted, that $$7,954.82 was the actual reasonable and necessary cost of repair. Parker's seeks recovery of $1,040.57 plus interest from Commerce.

In the Commerce Insurance Policy, at page 16, Commerce agreed in pertinent part as follows: "We will pay the cost to physically repair the auto. . .up to the actual cash value of the auto. . .at the time of the collision. The most we will pay will be either the actual cash value of the auto or the cost to physically repair the auto, whichever is less," minus the deductible.

At page 28 of the policy, Commerce agreed as follows: "If we fail to pay you within 7 days after receipt of the Completed Work Claim Form, you have the right to sue us. If a court decides that we were unreasonable in refusing to pay you on time, you are entitled to double the amount of damage plus costs and reasonable attorneys' fees."

The court finds that Commerce was unreasonable in refusing to pay the actual reasonable and necessary costs of repair of each of the vehicles. Commerce presented no evidence at any time that Parker's fees were excessive, and had no evidence of alternative amounts for the reasonable and necessary costs of repair. It was unreasonable of Commerce to rely on estimates generated from manuals over the actual reasonable cost of repair.

4

## Conclusions

Commerce argues that the assignments signed by the customers were not effective because at the time they were signed, there was no claim to be assigned. It is true that on the dates the customers signed the assignments, the amounts of the claims were not known. However, it was clear that each vehicle had been involved in a collision and needed repair, and each customer was entitled to reimbursement from Commerce for the reasonable cost of repair (up to the value of the vehicle, which is not at issue), less any deductible. The specific amount was yet to be determined and could not be determined until the full repair needs of each vehicle could be identified after disassembly. The assignments were given in exchange for consideration in the form of release of the vehicle from Parker's right to retain possession based on its lien until fully paid. The assignments were valid.

The only evidence about the reasonableness of the cost of repair was credible evidence from Mike Parker. No other evidence was presented, and the credibility of his evidence was not undermined by questioning.

Parker's is entitled to the shortfall in each case, plus prejudgment interest on the specific amount of each shortfall from the date of last payment on the bill.

Parker's is also entitled to double the damages and costs, and entitled to reasonable attorneys' fees. Commerce argues that Parker's should not be entitled to double damages and attorneys' fees because the complaint did not give notice that such a claim was going to be made. However, Commerce is deemed to know the contents of its own policy, and the provision does not require notice. The only prerequisite is that a court decides that Commerce was unreasonable. If that prerequisite occurs, "you are entitled to double the amount of damage plus costs and reasonable attorneys' fees." The policy describes such recovery as an entitlement. Moreover, attorneys' fees were specifically requested in the complaint, "and such other relief as the court deems just."

The calculations are as follows:

McNary     302.39 as of 12/12/09
          + 229.82 (interest for 76 months)
          532.21

Kehn      669.68 as of 2/8/12
          + 334.84 (interest for 50 months)
          1,004.52

Lepore    1,040.57 as of 6/25/12
          + 478.66 (interest for 46 months)
          1,519.23

532.21 + 1,004.52 + 1,519.23 = $3,055.96 x 2 = $6,111.92.

Even without attorneys' fees, the amount exceeds the jurisdictional amount for small claims court.

Plaintiff is entitled to recover $5,000.00 plus costs of $90.00.

Dated this _21st_ day of April, 2016.

Mary Miles Teachout
Superior Court Judge

6